IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANNETTE HEARAN,

Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

Respondent.

No. 17 C 0542

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Annette Hearan ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.] The parties have filed cross-motions for summary judgment [ECF Nos. 13 and 20] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 13] is granted, and the Commissioner's Motion [ECF No. 20] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

## I. PROCEDURAL HISTORY

Claimant filed her claim for SSI on April 2, 2013, and her claim for DIB on October 28, 2013. (R. 19). In both applications, Claimant alleged disability beginning June 22, 2012. (*Id.*) These applications were denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On July 6, 2015, Claimant was represented by counsel and appeared and testified at a hearing before ALJ Jose Anglada. (R. 35–104.) The ALJ also heard testimony from vocational expert ("VE") Grace Gianforte. (*Id.*)

On September 9, 2015, the ALJ denied Claimant's claims for DIB and SSI, based on a finding that she was not disabled under the Act. (R. 19–29.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSR").[2] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since her alleged onset date of June 22, 2012. (R. 21.) At step two, the ALJ found that Claimant had the severe impairments of obesity and loss of vision. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P., Appendix 1. (R. 24.) The ALJ then assessed Claimant's residual functional capacity ("RFC")[3] and concluded:

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can

> [Claimant] has the residual functional capacity to lift and carry no more than 50 pounds occasionally and 25 pounds frequently; can be on her feet standing/walking about 6 hours in an 8-hour workday with normal rest periods; can sit about 6 hours with normal rest periods; unable to work at heights or frequently climb ladders; should avoid operation of moving or dangerous machinery; visual acuity in the worse eye, the right eye, is 20/50 which allows her to read 8 point font.

(R. 24.) Based on this RFC, the ALJ determined at step four that Claimant was capable of performing her past relevant work as a certified nurse assistant ("CNA") and as a collections clerk. (R. 28.) Therefore, the ALJ found that Claimant had not been under a disability from June 22, 2012, the alleged onset date, through the date of the decision. (R. 28.) The Appeals Council declined to review the matter on November 29, 2016, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere

---

still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant alleges a number of errors on appeal. Among other things, Claimant contends that the ALJ: (1) failed to properly account for her mental impairment; (2) failed to appropriately evaluate the opinion of her treating physician; and (3) improperly assessed her subjective symptom statements and credibility. [ECF No. 13, at 5–16.]

**A.    The RFC Determination**

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do de-spite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as

4

well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

The Court first addresses Claimant's argument that the RFC is not supported by substantial evidence because the ALJ incorrectly identified Claimant's *right* eye as her better eye, with 20/50 vision, where the record evidence clearly shows that Claimant is essentially blind in the right eye. It is Claimant's *left* eye that has 20/50 vision. (R. 534.) According to Claimant, this factual error necessitates remand because such an internal inconsistency makes it "difficult to follow the reasoning of the ALJ's conclusion." [ECF No. 13, at 6.] But the Court "will not remand a case to the ALJ for further specification where [the Court is] convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). As Claimant concedes in her brief, the ALJ's summary of the medical evidence recognizes that it is the *left* eye with a visual acuity of 20/50. (R. 26–27.)

Additionally, the VE was present at the administrative hearing and heard Claimant's testimony regarding her right eye. (R. 95.) She also had the opportunity to review the medical records prior to the hearing. (*Id.*) And, immediately before the VE testified, the ALJ explicitly confirmed with Claimant that her left eye is the "better eye." (*Id.*) Furthermore, Claimant's

5

attorney questioned the VE regarding monocular vision, and the VE testified that an individual with normal vision in one eye and loss of vision in the other could perform Claimant's past relevant work. (R. 99–101.) Thus, while this flaw in the ALJ's RFC determination is not ideal, Claimant has not pointed to anything suggesting correction of this error would have resulted in a different outcome and, therefore, remand is not warranted on this basis alone. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).[4]

However, Claimant has identified other errors in the ALJ's RFC determination which necessitate remand. For example, the ALJ did not explain why he did not include any mental limitations in Claimant's RFC. The ALJ only stated that Claimant's affective disorder "does not cause more than minimal limitation in [Claimant's] ability to perform basic mental work activities and is therefore nonsevere." (R. 22.) "Mental limitations must be part of the RFC assessment, because '[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work.' " *Craft*, 539 F.3d at 676 (quoting 20 CFR § 404.1545(c)). The ALJ found Claimant had mild limitations in activities of daily living, social functioning, and in maintaining concentration, persistence, or pace. (R. 23.) But those limitations were not factored into the RFC. *See Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) (remanding because mild limitations in these three areas "should have been reflected as limitations in the RFC finding"); *see also Alesia v. Colvin*, 2015 WL 5062812 (N.D. Ill. Aug. 26, 2015) (a finding

---

[4] The Court is similarly not persuaded by Claimant's argument that the ALJ's failure to explain his conclusion that 20/50 visual acuity indicates an ability to read 8-point font warrants remand. [ECF No. 13, at 6.] A simple Internet search for "20/50 vision font size" reveals the basis for the ALJ's determination. *See* https://www.teachingvisuallyimpaired.com/print-comparisons.html (last visited May 7, 2018) (noting the print size comparison for visual acuity of 20/50 is 8 pt. font). Accordingly, remand on this basis would be inappropriate. *See McKinzey*, 641 F.3d at 892 ("It would serve no purpose to remand this case to the ALJ for a statement of the obvious.").

of non-severity of depression did not, on its own, support the ALJ's conclusion that no further limitations in claimant's work-related activities were warranted).

Further, a failure to fully consider the impact of non-severe impairments requires reversal. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). "Regardless of whether the ALJ believed Claimant's mental impairments were severe or non-severe, he should have considered her [affective disorder] when crafting the RFC." *Clark v. Colvin*, 2016 WL 6476543, at *4–5 (N.D. Ill. Nov. 2, 2016). On remand, the ALJ must explain what effect, if any, Claimant's mild limitations in mental functioning had on her RFC. *See Plump v. Colvin*, 2013 WL 2425574, at * 13 (N.D. Ind. June 3, 2013).

**B.  The Treating Physician's Opinion**

Claimant next contends that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Lim. [ECF No. 13, at 6–10.] The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[5]  20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an

---

[5] The SSA recently adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. (*Id.*)

7

examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

If a treating physician's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Campbell*, 627 F.3d at 308. In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6).

On July 22, 2015, Dr. Lim completed a Vision Impairment Medical Source Statement. (R. 625–26.) The ALJ afforded Dr. Lim's opinions "little weight" because they were "not consistent with the available evidence." (R. 27.) The Court finds that the ALJ improperly discounted Dr. Lim's opinions, an error necessitating remand.

In discounting Dr. Lim's opinions, the ALJ relied primarily on the report from Dr. Hillman's August 2013 consultative examination. For instance, Dr. Lim opined that Claimant is not capable of avoiding ordinary workplace hazards, such as boxes on the floor, doors ajar, or approaching people. (R. 626.) In rejecting this opinion, the ALJ cited to Dr. Hillman's report where he noted that Claimant ambulated in the hallway and exam room without assistance. (R. 27, 518.) But this observation is not necessarily inconsistent with Dr. Lim's assessment; there is no indication if Claimant encountered and successfully avoided any obstacles while ambulating

during the consultative examination. Walking down an empty hallway is not the same as navigating a workplace hallway with boxes or objects on the floor, or other tripping hazards such as cords and lines.[6] Further, Claimant testified that she frequently bumps into objects around the house such as the kitchen table, chairs, or the garbage can. (R. 75.) She has to move these things out of the way in order to prevent herself from tripping. (*Id.*) When walking outside, she is always "bumping and tripping" over people and often stumbles over sidewalks. (R. 76–77.)

Although Dr. Hillman found that there was severe generalized constriction and a central island of vision remaining, he stated that the left visual field restriction measurements were not consistent with his examination. (R. 517.) However, contrary to the ALJ's opinion, this statement does not undermine Dr. Lim's opinion; it merely indicates that Dr. Hillman was unable to obtain consistent measurements. (R. 27, 517–18.) Dr. Hillman did not elaborate on this statement, and his report does not indicate if he suspected that Claimant had no left visual field restrictions whatsoever, or still had some restrictions but not to the extent that the testing revealed. Notably, Claimant's "cooperation, understanding, and effort were rated as good by the medical assistant with the visual field tests." (R. 515.)

Dr. Lim additionally opined that Claimant would need to take unscheduled breaks during the workday due to intermittent loss of vision in the left eye, and that Claimant's [anisometropic] amblyopia may make it difficult for her to see and/or focus. (R. 626.) Nothing in Dr. Hillman's report contradicts this opinion, and the ALJ did not explain how Claimant's intermittent blurry vision was inconsistent with the evidence of record.

Further, even assuming the ALJ provided "good reasons" for not affording Dr. Lim's opinion controlling weight, he was still required to address the factors listed in 20 C.F.R. §

---

[6] The VE testified that a CNA has to be very vigilant, attentive, and aware of the environment because there is a lot of equipment and cords and lines in the workplace, and any compromise to monocular vision "certainly would impact their facility and care and ability to carry out tasks effectively." (R. 102.)

404.1527 to determine what weight to give the opinion. *See* SSR 96-2p.[7] SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*). 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Here, the ALJ afforded Dr. Lim's opinion "little weight," but failed to adequately address or otherwise demonstrate consideration of several of the enumerated factors. Specifically, other than acknowledging that Dr. Lim was Claimant's treating physician, the ALJ did not discuss the extent of the treatment relationship, the frequency of examinations, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Dr. Lim had a relevant specialty. The ALJ's failure to "sufficiently account [ ] for the factors in 20 C.F.R. § 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents the Court from assessing the reasonableness of the ALJ's decision. For these reasons, the ALJ did not offer substantial evidence for rejecting the opinions of Dr. Lim, which is an error requiring remand.

## C. The Credibility Determination

Finally, Claimant contends that the ALJ erred in evaluating her subjective symptom statements and credibility. [ECF No. 16, at 15–19.] The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.[8] Although an ALJ's credibility determination is entitled to special

---

[7] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (March 27, 2017).

[8] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that

deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009).

In assessing Claimant's credibility, the ALJ invoked the oft-criticized boilerplate language that "the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent for the reasons explained in this decision." (R. 19.) The Seventh Circuit has cautioned that this phrase is "meaningless," because it fails to explain what the ALJ relied upon in making his determination. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). But the use of the boilerplate language does not automatically undermine an ALJ's credibility determination, if he also points to specific information in the record to support the assessment. *Id.* at 367–68.

Here, the ALJ followed up this boilerplate language with a brief summary of the objective medical evidence, but offered very little analysis of that evidence. This prevents the Court from assessing the reasonableness of the ALJ's decision. *See Erwin v. Astrue,* No. 11 CV 1555, 2012 WL 3779036, at *8 (N.D. Ill. Aug. 30, 2012) ("Summarizing medical evidence is no substitute for actual analysis of medical evidence."). As far as the Court can discern, the sole

---

process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on September 9, 2015. (R. 29.) Therefore, contrary to Claimant's argument, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

reason for the ALJ's adverse credibility determination was a purported lack of objective medical evidence. This is not enough. "A lack of medical evidence supporting the severity of a claimant's symptoms is insufficient, standing alone, to discredit her testimony." *Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014); *see also* SSR 96-7p, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").

Further, while the ALJ provided a terse, perfunctory summary of Claimant's various complaints regarding her vision and other symptoms, he provided little in the way of explanation as to why he found those allegations to be incredible or inconsistent with one another. (R. 25.) The ALJ's failure to address which of Claimant's statements (if any) he found credible, which statements he discounted, and why, is inconsistent with the applicable regulations and Seventh Circuit precedent. *See, e.g.,* SSR 96-7p, at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' "); *McKinzey*, 641 F.3d at 890 ("the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record.").

In sum, the Court concludes that without a sufficient explanation that connects the record evidence to the ALJ's conclusion, the basis for the ALJ's credibility determination is unclear and unreviewable. The Court, however, is not suggesting that the ALJ's credibility determination is incorrect or patently wrong, but only that greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir.

2001). On remand, the ALJ should re-evaluate Claimant's subjective symptom statements pursuant to SSR 16-3p, with due regard to the full range of medical evidence, sufficiently articulate how he evaluated that evidence, and then explain the logical bridge from the evidence to his conclusions.

**D.    Other Issues**

Because the Court remands on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the results in this case. The Commissioner, however, should not assume these issues were omitted from the opinion because no error was found.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 13] is granted, and the Commissioner's Motion [ECF No. 20] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 9, 2018